UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRIAXX PRIME CDO 2006-1, LTD.,
TRIAXX PRIME CDO 2006-2, LTD., and
TRIAXX PRIME CDO 2007-1, LTD.,

                 Plaintiffs,

    v.

THE BANK OF NEW YORK MELLON, and
U.S. BANK, NATIONAL ASSOCIATION,

                 Defendants.

No. 16-cv-01597-NRB

Hon. Naomi Reice Buchwald

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

JONES DAY
David F. Adler
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-1344
dfadler@jonesday.com

JONES DAY
Michael T. Marcucci
Keith Kollmeyer
James S. D'Ambra, Jr.
100 High Street, 21st Floor
Boston, MA 02110
(617) 960-3939
mmarcucci@jonesday.com
kkollmeyer@jonesday.com
jsdambra@jonesday.com

*Attorneys for Defendant U.S. Bank
National Association*

MAYER BROWN LLP
Matthew D. Ingber
Christopher James Houpt
Silvia Araxie Babikian
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mingber@mayerbrown.com
choupt@mayerbrown.com
sbabikian@mayerbrown.com

*Attorneys for Defendant The Bank of New York
Mellon*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................... 3

I.    PLAINTIFFS DO NOT HAVE STANDING ...................................................... 4

    A.    Plaintiffs Assigned All Rights in the RMBS Certificates
        to the CDO Indenture Trustee ................................................................ 4

    B.    The Torts Alleged in The Complaint Arose After the RMBS
        Certificates Were Assigned to the CDO Indenture Trustee ................... 7

    C.    Plaintiffs Assigned Their Tort Claims ................................................. 10

II.   THE COURT ALREADY REJECTED THE BASIS FOR COUNT 7 AND
    IT SHOULD BE DISMISSED ........................................................................... 14

III.  THE ECONOMIC LOSS DOCTRINE BARS PLAINTIFFS' TORT CLAIMS ............. 14

IV.   PLAINTIFFS ABANDONED THEIR BREACH OF FIDUCIARY
    DUTY CLAIMS ................................................................................................. 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

C**ASES**

*ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank*
   *USA, Nat'l Ass'n v. DB Structured Prods., Inc.*,
   5 F. Supp. 3d 543 (S.D.N.Y. 2014)...........................................................................4

*Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*,
   509 F. App'x 82 (2d Cir. 2013) ...............................................................................11

*Allen v. N.Y.C. Hous. Auth.*,
   No. 10-cv-00168-CM-DF, 2012 WL 4794590 (S.D.N.Y. Sept. 11, 2012) .............................16

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*,
   57 F.3d 146 (2d Cir. 1995)......................................................................................12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................4

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
   165 F. Supp. 3d 80 (S.D.N.Y. 2016).........................................................................15

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   949 F. Supp. 2d 486 (S.D.N.Y. 2013).......................................................................14

*Burry v. Madison Park Owner LLC*,
   84 A.D.3d 699, 924 N.Y.S.2d 77 (N.Y. App. Div. 1st Dep't 2011).........................7

*Commonwealth of Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
   25 N.Y.3d 543, 35 N.E.3d 481 (2015).......................................................................12

*Cortlandt St. Recovery Corp. v. Hellas Telecom.*,
   790 F.3d 411 (2d Cir. 2015)......................................................................8, 10, 12, 13

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)...............................................................................................10

*Del. Art Museum v. Ann Beha Architects, Inc.*,
   No. 06-481-GMS, 2007 WL 2601472 (D. Del. Sept. 11, 2007)...............................14

*Dexia SA/NV, Dexia Holdings, Inc. v. Morgan Stanley*,
    41 Misc. 3d 1214(A), 980 N.Y.S.2d 275, 2013 WL 5663259 (N.Y. Sup. 2013) ....................11

*Dexia SA/NV v. Morgan Stanley*,
    135 A.D.3d 497, 22 N.Y.S.3d 833 (Mem) (N.Y. App. Div. 1st Dep't. 2016)...............8, 9, 11

*FDIC v. Citibank N.A.*,
    No. 15-cv-6560-ALC, 2016 WL 8737356 (S.D.N.Y. Sept. 30, 2016),
    *leave to amend granted*, ECF No. 47 (July 10, 2017) ..........................................9, 11

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
    No. 13-cv-519-RJS, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ...............................8, 9, 10

*In re Sofer*,
    519 B.R. 28 (Bankr. E.D.N.Y. 2014).....................................................................12

*Int'l Design Concepts, LLC v. Saks Inc.*,
    486 F. Supp. 2d 229 (S.D.N.Y. 2007)...................................................................11

*Mayor & City Council of Balt. v. Citigroup, Inc.*,
    709 F.3d 129 (2d Cir. 2013)...............................................................................3

*Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC*,
    149 A.D.3d 127, 50 N.Y.S.3d 13 (N.Y. App. Div. 1st Dep't 2017).......................5, 6, 12, 13

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
    No. 14-cv-10104-VEC, 2015 WL 5710645 (S.D.N.Y. Sept. 29, 2015)............................7, 15

*Pro Bono Inv., Inc. v. Gerry*,
    No. 03-cv-4347-JGK, 2008 WL 4755760 (S.D.N.Y. Oct. 29, 2008) ..................................11

*Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*,
    No. 14-cv-08175-LGS-SN, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ...............................8

*Solomon by Solomon v. City of N.Y.*,
    66 N.Y.2d 1026, 489 N.E.2d 1294 (1985).................................................................7

*Triaxx Prime CDO 2006-1, LTD. v. Bank of N.Y. Mellon*
    No. 16-cv-1597-NRB, 2017 WL 1103033 (S.D.N.Y. Mar. 21, 2017) ........................... *passim*

**RULES**

Fed. R. Civ. P. 12(b)(1)........................................................................................2, 16

Fed. R. Civ. P. 12(b)(6)..................................................................................................2, 16

Fed. R. Civ. P. 41(b) ..........................................................................................................16

## INTRODUCTION

Plaintiffs continue to press claims they do not have, based upon certificates they do not hold, for damages they have not sustained.  Plaintiffs' Third Amended Complaint ("TAC") reiterates rather than remedies the standing defects which led this Court to dismiss their earlier complaint.  The TAC should be dismissed for any of several reasons, but all rest on the same basic premise.  The claims alleged against U.S. Bank and BNYM as RMBS Trustees (together, the "RMBS Trustees") are claims by the <u>holders</u> of RMBS certificates issued by the RMBS trusts.  Nothing in the TAC disturbs the Court's correct conclusion that the Plaintiffs are not holders of the RMBS certificates.  Nor were Plaintiffs holders at the time the TAC alleges that the RMBS Trustees breached their purported contractual and common law duties.  This fundamental defect requires dismissal of the TAC for four reasons.

*First*, Plaintiffs lack standing to pursue their breach of contract claims for the same reasons the Court articulated in dismissing their First Amended Complaint.  The assignment of all "right, title and interest" in the RMBS certificates to the CDO Indenture Trustee deprives the Plaintiffs of standing to sue for breach of contract.  Plaintiffs' inclusion of a reference to Section 7.5 of the CDO Indentures in the TAC does not save their claims.  Section 7.5 concerns perfection and maintenance of a security interest in the RMBS certificates themselves, not any right of the Plaintiffs to sue or of the Collateral Manager to direct the CDO Indenture Trustee to sue.

*Second*, Plaintiffs lack standing to bring the tort claims alleged in the TAC because Plaintiffs were not the holders of the RMBS certificates at the relevant time, are not the beneficiaries of the certificates, and do not otherwise allege that they were injured as a result of Defendants' conduct.  Whether viewed as a matter of standing, or as simple failure to plausibly allege elements of their tort claims (*i.e.*, a duty owed to Plaintiffs by the RMBS Trustees and

damages suffered), it is clear that the CDO Issuers cannot maintain claims for damages allegedly suffered by the holders of the RMBS certificates when they are not themselves holders.

*Third*, Plaintiffs' tort claims are barred by the economic loss doctrine because they seek the same damages for the same conduct alleged in their contract claims.

*Fourth*, and finally, Plaintiffs' new Count 7 must be dismissed because it is premised upon a reading of the CDO Indenture and Collateral Manager Agreement that this Court has already rejected. As this Court held, the CDO Collateral Manager does not have contractual authority to direct the CDO Indenture Trustee to either bring these claims or assign them back to the CDO Issuers or the Collateral Manager. The Court rightly rejected that assertion; the same reasoning mandates dismissal of Count 7.

Defendants therefore respectfully move this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' claims against U.S. Bank and BNYM in their entirety.

## **BACKGROUND**

Given the minor changes to the standing allegations from the previous complaint, *compare* First Amended Complaint, ECF No. 33 *with* PSAC, ECF No. 61-1 *and* TAC,[1] the background the Court set forth in its Memorandum and Order covers most of the facts (now drawn from the TAC and the applicable governing agreements) necessary to decide this motion to dismiss. *See Triaxx Prime CDO 2006-1, LTD. v. Bank of N.Y. Mellon*, No. 16-cv-1597-NRB, 2017 WL 1103033, at *1-2 (S.D.N.Y. Mar. 21, 2017), ECF No. 89 ("Order").

---

[1] Plaintiffs amended their complaint to correct a pleading error in the Second Amended Complaint ("SAC"), ECF No. 96, with respect to one of the RMBS trusts at issue in this action. The TAC and SAC differ only as to the "Subject Trusts" in Paragraph 3 and Exhibit A of the respective pleadings. In the event that the Court denies Plaintiffs leave to amend, this motion applies to the SAC.

Plaintiffs are the Issuers, as defined in the CDO Indentures, of three CDOs.  *See* Order at *1; TAC ¶¶ 1, 3.  In 2006 and 2007, Plaintiffs purchased RMBS certificates from certain RMBS trusts having U.S. Bank (or a predecessor) or BNYM as the RMBS Trustee.  *See* Order at *1; TAC ¶ 1.  Pursuant to the CDO Indentures, Plaintiffs then transferred all of their property, including the RMBS certificates, to the CDO Indenture Trustee (then LaSalle Bank) to secure CDO notes sold to investors.  *See* Order at *1.  Following those 2006 and 2007 transfers (inherent to the CDO structure itself), Plaintiffs did not hold any of the RMBS certificates at issue.  *See id.*

Plaintiffs bring claims against U.S. Bank and BNYM in their capacities as RMBS Trustees.  *See id.* at *2; TAC ¶¶ 3, 5-6.  Specifically, Plaintiffs assert claims against Defendants for breach of contract (Counts 1 & 2), negligence/failure to avoid conflicts (Counts 3 & 4), and breach of fiduciary duty (Counts 5 & 6).  Plaintiffs also assert a claim against U.S. Bank as CDO Indenture Trustee for breach of duty and seek equitable relief (Count 7).  The claims against the RMBS Trustees allege that they breached contractual and common law duties to:  (a) give notice to certain RMBS trust deal parties regarding breaches of R&Ws and to enforce certain parties' obligation to repurchase mortgage loans that breached R&Ws; (b) notify certain RMBS trust deal parties of Events of Default; (c) notify RMBS certificateholders of Events of Default and breaches of R&Ws; (d) take "prudent" action after the alleged Events of Default and the breaches of loan R&Ws; and (e) exercise all of Defendants' rights and powers under the applicable PSAs.  *See* Order at *2; TAC ¶¶ 150, 159, 171, 177, 182, 188.

## ARGUMENT

Plaintiffs' claims must be dismissed in their entirety.  To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face."  *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013).  A court is "not bound to accept as true a

3

legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  In a contract case like this, the Court may look to the contracts themselves, rather than Plaintiffs' characterization, in deciding the motion to dismiss.  *See ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, Nat'l Ass'n v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014).

## I.     PLAINTIFFS DO NOT HAVE STANDING.

### A.     Plaintiffs Assigned All Rights in the RMBS Certificates to the CDO Indenture Trustee.

This Court has already held that Plaintiffs lack standing to pursue their contract claims because the "[g]rant of all of [Plaintiffs'] right, title and interest in any and all . . . property is broad enough to include the transfer of the right to bring contract claims" relating to the RMBS certificates.  *See* Order at *3 (internal quotation marks and citation omitted).  In dismissing Plaintiffs' contract claims the Court granted leave to amend, but ordered Plaintiffs to explain how they cured this standing defect.  *See id.* at *6.  Plaintiffs have failed to do so.  The Court should dismiss their contract claims again.

To begin, Plaintiffs assert the same standing allegations that this Court previously rejected, which are included in the TAC admittedly to preserve their appellate rights.  *See* TAC ¶¶ 21-27.  This Court should once again reject those allegations.  *See* Order at *4-5.

For the first time, Plaintiffs contend that Section 7.5 of the CDO Indentures either gives them standing to bring breach of contract claims or authorizes the Collateral Manager to direct the CDO Indenture Trustee to transfer the claims back to Plaintiffs.  *See* TAC ¶¶ 28, 30.  Section 7.5 does neither, which likely explains why Plaintiffs never raised it until now.  Rather, the section concerns the preservation of a security interest in the Collateral (including the RMBS certificates).  Section 7.5(a) states:

> The Issuer [Plaintiff] (or the Trustee on behalf of the Issuer) shall file any financing statements and any continuation statements, *provided* that the Issuer shall from time to time . . . execute and deliver all such supplements and amendments hereto and . . . , execute all such Financing Statements, continuation statements, instruments of further assurance and other instruments, and shall take such other action as may be necessary or advisable or desirable to secure the rights and remedies of the Secured Parties hereunder . . .

CDO Indentures, Marcucci Decl. Exs. A-C (emphasis in the originals).  Under Section 7.5, Plaintiffs "retain[] ultimate responsibility to maintain the perfection of the Collateral" and "shall otherwise cause the perfection and priority of the security interest in the Collateral and the maintenance of such security interest at all times."  *Id.*  As such, the section includes other provisions regarding the "protection" and "maintenance" of the Collateral including, for example, paying taxes on the RMBS certificates.  *Id.*§ 7.5(c).  Section 7.5 plainly does not bear on Plaintiffs' ability to assert the claims here nor does it undo the grant of all "right, title and interest" in the RMBS certificates to the CDO Indenture Trustee.  *See* Order at *3.

Nor does Section 7.5(a)(iv) specifically provide Plaintiffs with the right to pursue claims relating to the RMBS certificates, as part of the CDOs' Collateral.  *See* TAC ¶ 28; CDO Indentures § 7.5(a)(iv) ("The Issuer shall . . . enforce any of the Pledged Securities or other instruments or property included in the Collateral").  When that clause is read, as it must be, in the context of Section 7.5 and the CDO Indenture as a whole, *see Natixis Real Estate Capital Trust 2007-HE2 v. Natixis Real Estate Holdings, LLC*, 149 A.D.3d 127, 133, 50 N.Y.S.3d 13 (N.Y. App. Div. 1st Dep't 2017) (citation omitted), it relates to the "perfection and priority" of the security interests in the RMBS certificates themselves, and not any claims belonging to the holders of those certificates.[2]  And this allocation of responsibility is logical.  When the Plaintiffs

---

[2] Notably, other parts of the CDO Indenture explicitly reference the enforcement of legal claims in providing other parties to the CDO Indentures the ability to bring an action.  *See, e.g.*, CDO Indenture § 5.3, Marcucci Decl. Exs. D-F (providing the Trustee the ability to "enforce any other proper remedy or legal or equitable

as CDO Issuers transferred the RMBS certificates to the CDO Indenture Trustee, it was for the purpose of establishing the CDO Indenture Trustee's security interest in the certificates.  It is only natural, then, that the CDO Issuers are tasked with maintaining that interest.

Additionally, as this Court held, the Collateral Management Agreement remains "subject to . . . the Indenture."  *See* Order at *4.  According to the CDO Indentures, Plaintiffs transferred all their property to the CDO Indenture Trustee, thereby divesting Plaintiffs with the right to sue on the Collateral.  *See id.*  Because the Collateral Manager, as agent, cannot have rights greater than its principal, the Plaintiffs, the Collateral Management Agreement also does not provide a basis for standing.  *See id.*

Further, neither the CDO Indenture nor the Collateral Management Agreement provides independent authority to the Issuer or the Collateral Manager to bring these claims.  This is unlike *Natixis*, where the agreement granted the Securities Administrator the right to pursue claims in addition to the trustee's authority to do so.  *See Natixis Real Estate Capital Trust*, 149 A.D.3d at 132-33 (concluding that securities administrator had "the right to prosecute legal action" where the PSA stated that "Securities Administrator shall have no obligation to appear in, prosecute or defend any legal action . . . provided, however that the Securities Administrator may in its discretion undertake any such action that it may deem necessary or desirable in respect of this Agreement").

Nothing in the TAC disturbs the Court's conclusion that Plaintiffs transferred any right to bring contract claims and thus lack standing to pursue them.  Those claims must be dismissed.

_____

(continued…)

right vested in the Trustee by this Indenture or by law"); § 5.6, Marcucci Decl. Exs. G-I ("All rights of action and claims under this Indenture or the Senior Notes may be prosecuted and enforced by the Trustee without the possession of any of the Senior Notes").

**B.      The Torts Alleged in The Complaint Arose After the RMBS Certificates
Were Assigned to the CDO Indenture Trustee.**

In its Order, the Court left open the possibility that Plaintiffs might have retained

standing to sue on their tort claims.  *See* Order at *5.  As set forth in Section I(C), *infra*, under

New York law (which was not briefed before), the Granting Clauses also transferred any tort

claims.  But the Court need not decide that issue to dismiss Plaintiffs' claims.  Even if Plaintiffs

retained some tort claims post-transfer, they did not keep the claims asserted here.  The reason is

simple.  The TAC alleges torts that arose after the RMBS certificates were transferred to the

CDO Indenture Trustee.  If the RMBS Trustees injured anyone by their conduct, it was the

RMBS certificateholders, which Plaintiffs are not.  The tort claims should be dismissed as well.

To state a tort claim, Plaintiffs must allege, *inter alia*, that Defendants (a) owed a duty to

them and (b) caused them damages.  *See Burry v. Madison Park Owner LLC*, 84 A.D.3d 699,

700, 924 N.Y.S.2d 77 (N.Y. App. Div. 1st Dep't 2011) (stating elements of a breach of fiduciary

duty claim); *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104-VEC, 2015 WL

5710645, at *7 (S.D.N.Y. Sept. 29, 2015) (explaining that the duty to avoid conflicts of interest

is an extra-contractual duty that should be pleaded as a negligence action); *Solomon by Solomon
v. City of N.Y.*, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294 (1985) (stating elements of a negligence

claim).  Plaintiffs do not allege either element here and in turn cannot establish standing.

The RMBS Trustees allegedly breached duties owed to the holders of the RMBS

certificates.  TAC ¶¶ 14-15, 19.  The CDO Indentures determine who holds the RMBS

certificates at issue, who in turn suffered the alleged damages and can bring suit.  *See* Order at

*5.  The Court held that the CDO Indentures transferred the RMBS certificates to the CDO

Indenture Trustee.  *See* Order at *3.  The RMBS certificates were transferred in 2006 or 2007, on

the respective closing dates of the CDO Indentures.  *See* CDO Indentures (definition of "Closing Date"), Marcucci Decl. Exs. J-L.

But, according to Plaintiffs, the RMBS Trustees breached their duties to the holders of the RMBS certificates in 2009 or later.  TAC ¶¶ 75, 114, 124, 129, 131.  Thus, any injury to the RMBS certificateholders from Defendants' conduct occurred after 2006 or 2007.  By then, the CDO Indenture Trustee, on behalf of the CDO noteholders, was the holder of the RMBS certificates.  Because Plaintiffs did not hold the RMBS certificates in 2009 or thereafter, they do not (and cannot) allege that Defendants breached any duties owed to them.  *See* TAC ¶¶ 101, 104, 106, 109, 112-13, 154, 172, 183-84, 197; *Cortlandt St. Recovery Corp. v. Hellas Telecom.*, 790 F.3d 411, 420 (2d Cir. 2015) ("It is still true that 'the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim'" (citation omitted)); *Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 14-cv-08175-LGS-SN, 2017 WL 945099, at *1 (S.D.N.Y. Mar. 10, 2017) (discussing that an RMBS trustee owes certain limited duties to certificateholders as set forth in the applicable agreements (citations omitted)).  Here, given that the RMBS certificates were transferred before Defendants' purported tortious conduct, Plaintiffs do not "stand in the place of the injured party."  *See Cortlandt St. Recovery Corp.*, 790 F.3d at 418 (internal quotation marks and citation omitted). The TAC does not allege that Defendants breached any duty to Plaintiffs (as non-holders) or that their conduct injured non-holders.  *See id.* at 420; *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13-cv-519-RJS, 2014 WL 1383703, at *11 (S.D.N.Y. Mar. 31, 2014) (dismissing claims brought by plaintiff who was not the owner of any of the underlying assets).

The allegations here differ from the scenario in *Dexia SA/NV v. Morgan Stanley* where the tort claims arose from the purchase of RMBS certificates.  135 A.D.3d. 497, 497, 22

N.Y.S.3d 833 (Mem) (N.Y. App. Div. 1st Dep't. 2016).  There, the Dexia plaintiffs sought to bring fraud claims based upon FSAM's purchase of RMBS certificates from Morgan Stanley. FSAM later sold the RMBS certificates to Dexia, but did not assign fraud claims arising from FSAM's original purchase, or a broader set of rights.  *See id.* at 497.  The Appellate Division affirmed the dismissal, concluding that Dexia did not hold the fraud claims against Morgan Stanley; FSAM had no damages because it sold the certificates to Dexia at the same price FSAM had paid.  *Id.* at 497-98.  Here, unlike *Dexia*, the alleged torts occurred after transfer of the RMBS certificates to the CDO Indenture Trustee, and arise from the RMBS Trustees' alleged duties to the certificateholders.  *See FDIC v. Citibank N.A.*, No. 15-cv-6560-ALC, 2016 WL 8737356, at *4-5 (S.D.N.Y. Sept. 30, 2016) (after transfer, the holder of RMBS certificates, and not the transferor, has the right to bring claims against the RMBS trustee) (citations omitted), *leave to amend granted*, ECF No. 47 (July 10, 2017).

For this reason, in *House of Europe*, Judge Sullivan concluded that, plaintiff EAA which held notes in the CDO but not the CDO assets, was not the holder of those assets and thus did not suffer any loss.  *See* 2014 WL 1383703, at *11.  Judge Sullivan emphasized that EAA also failed to allege it, as a senior noteholder, suffered any losses as a result of the damaged CDO assets. Accordingly, EAA's claims were dismissed for failure to adequately plead damages.  *See id.*

Here, Plaintiffs' connection to the RMBS certificates is even more attenuated.  Plaintiffs do not hold the RMBS certificates and do not plausibly allege that they personally suffered losses as a result of Defendants' conduct.  *See* TAC ¶¶ 2, 154, 163, 184, 190.  If any party was injured, it was the CDO Indenture Trustee (in its capacity as such) as holder of the RMBS certificates, and any such losses would be passed on to the CDO noteholders (on whose behalf

the CDO Indenture Trustee holds the RMBS certificates). *See id.* ¶¶ 101, 104, 106, 109, 112-13, 154, 163, 172, 178, 183-84, 189-90, 197.

Accordingly, Plaintiffs cannot allege that they were injured by the RMBS Trustees' alleged breaches of their duties to RMBS certificateholders.  Their tort claims must be dismissed for lack of standing and failure to plead essential elements of the tort claims.  *See Cortlandt St. Recovery Corp.*, 790 F.3d at 420; *House of Europe Funding I, Ltd.*, 2014 WL 1383703, at *11.

### C.      Plaintiffs Assigned Their Tort Claims.

In any event, Plaintiffs also transferred any tort claims relating to the RMBS certificates in the Granting Clauses and lack standing to bring those claims.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press" (citation omitted)).  The Granting Clauses state that each Plaintiff "Grants to the [CDO Indenture] Trustee . . . all of its right, title and interest in, to and under, in each case, whether now owned or existing, or hereafter acquired or arising . . . <u>any and all other property</u> (other than Excepted Property) <u>of any type or nature owned by it</u> . . . ."  Order at *3 (emphasis added).  Tort claims are not among the enumerated "Excepted Property."  *See id.*  Thus, the plain language of the Granting Clauses shows that Plaintiffs' tort claims were transferred to the CDO Indenture Trustee.

In its earlier Order, the Court relied upon *Dexia* to suggest—in the absence of briefing on the issue—that the language of the CDO Indentures did not appear to transfer tort claims along with the RMBS certificates and related contract claims.  *See* Order at *5.  In that case, the Appellate Division held that the FSAM plaintiff's "agreement to deliver 'all right, title and interest' in the RMBS to the [Dexia] plaintiffs did not include fraud claims, since [FSAM] only assigned rights in the subject securities without explicitly referencing any related tort claims or the overall transaction . . . ."  *See id.* (internal quotation marks and citations omitted) (brackets in

the original).  *Dexia* rests on an important distinction between claims relating to the *acquisition* of certificates versus claims arising out of injuries suffered while *holding* certificates.  *See FDIC*, 2016 WL 8737356, at *4-5 (citations omitted).  The Dexia plaintiffs were attempting to bring fraud claims relating to FSAM's purchase of RMBS certificates years before the transfer, and the alleged injury happened at the time of sale.  *See Dexia SA/NV, Dexia Holdings, Inc. v. Morgan Stanley*, 41 Misc. 3d 1214(A), 980 N.Y.S.2d 275, 2013 WL 5663259, at *1, *4 (N.Y. Sup. 2013) (discussing how the agreement transferring the RMBS certificates to Dexia did not reference the transaction between FSAM as initial purchasers and the defendants who sold them).  In contrast, Plaintiffs are attempting to bring claims relating to injuries allegedly incurred by the RMBS certificateholders years after Plaintiffs purchased and transferred the certificates.  *See FDIC*, 2016 WL 8737356, at *4-5 (citations omitted).  The Granting Clauses, here, however, do not only assign Plaintiffs' rights in the RMBS certificates, but also include tort claims against the RMBS Trustees arising from those certificates.  The transfer of "any and all" of Plaintiffs' property "of any type or nature," "evinces that intent and effectuates the transfer of" tort claims. *Dexia*, 135 A.D.3d. at 497 (citation omitted).

Other authority supports this plain-language reading of the CDO Indentures.  In the Second Circuit, "assignments of general types or categories of property are effective under New York common law to transfer property interests in tort actions."  *Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, 509 F. App'x 82, 87 (2d Cir. 2013) (citation omitted).  Indeed, courts in this district have held that the granting of "all assets" is "broad enough to encompass all causes of action . . . ."  *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007) (holding that tort claims were transferred); *see Pro Bono Inv., Inc. v. Gerry*, No. 03-cv-4347-JGK, 2008 WL 4755760, at *17-18 (S.D.N.Y. Oct. 29, 2008) (concluding that the

"broad assignment" of "all assets" included the right to bring contract and tort claims).  Notably, Plaintiffs' grant of "all property" of "any type or nature" is broader than a grant of "all assets" because an asset is simply a type of property.  *See In re Sofer*, 519 B.R. 28, 37 (Bankr. E.D.N.Y. 2014).

And, as this Court recognized, Order at *5, "New York law does not require specific boilerplate language to accomplish the transfer of causes of action sounding in tort.  Rather, any act or words are sufficient which show an intention of transferring the chose in action to the assignee," *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 151-52 (2d Cir. 1995) (internal quotation marks and citations omitted); *see Commonwealth of Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d 543, 550, 35 N.E.3d 481 (2015) ("[W]here an assignment of . . . tort claims is intended in conjunction with the conveyance of a contract or note, there must be some language—although no specific words are required—that evinces that intent and effectuates the transfer of such rights"); *see also Cortlandt St. Recovery Corp.*, 790 F.3d at 418 ("A would-be assignor need not use any particular language to validly assign its claim so long as the language manifests [the assignor's] intention to transfer at least title or ownership" (internal quotation marks and citation omitted) (brackets in the original)).  The Granting Clauses reflect such an intention.

Moreover, construing the CDO Indentures to transfer Plaintiffs' contract claims, but not also their tort claims (or not transferring any claims at all), would be inconsistent with the overall structure of the CDOs and the commercially reasonable expectations of the parties.  *See Natixis Real Estate Capital Trust*, 149 A.D.3d at 139 ("[A] contract should not be interpreted to produce a result that is . . . contrary to the reasonable expectations of the parties" (internal quotation marks and citation omitted)).  Pursuant to the CDO Indentures, Plaintiffs transferred the RMBS

certificates to the CDO Indenture Trustee who, at the direction of a certain percentage of the Controlling Class of CDO noteholders or otherwise, can bring an action to, among other things, "compel performance of the covenant or agreement or to cure the representation or warranty, the breach of which gave rise to the Indenture Event of Default under such Section." *See, e.g.*, CDO Indentures § 5.4(b), Marcucci Decl. Exs. M-O; § 5.13, Exs. P-R.  Said differently, at the direction of the CDO noteholders, the CDO Indenture Trustee, as alleged by Plaintiffs, *see, e.g.*, TAC ¶¶ 29-32, 194-99, could bring (or appoint someone else to bring) the breach of contract and tort claims asserted here against the RMBS Trustees.  To have standing to bring such claims on behalf of the CDOs, however, the CDO Indenture Trustee must have ownership or title over the claims.  *See Cortlandt St. Recovery Corp.*, 790 F.3d at 418-19 (discussing how an assignee must have title or ownership of claims, not just a power of attorney, to have standing to bring suit) (citations omitted); *see also* Order at *3 n.2.

It makes little sense to conclude that the parties to the CDOs intended for Plaintiffs to transfer to the CDO Indenture Trustee contract claims against the RMBS Trustees, but intended that the CDO Issuers should retain ownership of tort claims that accrued after the date of the transfer.  *See Natixis Real Estate Capital Trust*, 149 A.D.3d at 139.[3]  Notably, Plaintiffs have not alleged that the CDO noteholders (who have the real economic interest here) agree with the Issuers' conduct or support the Collateral Manager's direction.  If they did, of course, those noteholders would direct the CDO Indenture Trustee to take those steps.  Plaintiffs transferred both contract and tort claims relating to the RMBS certificates to the CDO Indenture Trustee, and therefore lack standing to bring those claims here.

---

[3] It would be an even more absurd if just Plaintiffs as the CDO Issuers were able to bring claims, given the extensive language in the CDO Indentures regarding the CDO Indenture Trustee initiating suit, and the authority of the Controlling Class to direct the CDO Indenture Trustee regarding the same.  *See* CDO Indentures § 5.13, Marcucci Decl. Exs. P-R.

## II.     THE COURT ALREADY REJECTED THE BASIS FOR COUNT 7 AND IT SHOULD BE DISMISSED.

In Count 7, Plaintiffs seek an "equitable order" from the Court compelling U.S. Bank, as CDO Indenture Trustee, to follow the Collateral Manager's "directions" to assign the claims asserted in the TAC to the Collateral Manager, or to the Plaintiff-Issuers, and appoint the Collateral Manager as its "designee" to pursue the claims in the TAC.  TAC ¶¶ 30, 34, 192-99. The Court has already rejected Plaintiffs' reading of the applicable governing agreements.  The April 18, 2017 "direction" letter fails for the same reason the nearly-identical "direction" letter from August 16, 2016 was insufficient.  As the Court held, it is "a 'Majority of the Controlling Class' [who] could direct U.S. Bank (as CDO Indenture Trustee) to assign the claims back to the plaintiffs or to someone else," or to take other action—not the Collateral Manager.  *See* Order at *5.  Section 7.5 does not change this analysis, as it no more confers authority on the Collateral Manager to direct the CDO Indenture Trustee to take these actions, than it confers standing to sue upon the Plaintiffs or the Collateral Manager, *supra* § I(A).  Count 7 should be dismissed.

## III.    THE ECONOMIC LOSS DOCTRINE BARS PLAINTIFFS' TORT CLAIMS.

The economic loss doctrine further merits dismissal of Plaintiffs' tort claims since those claims seek economic damages for the same conduct alleged in their contract claims.  *See, e.g.*, *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 505 (S.D.N.Y. 2013) ("[W]here plaintiffs allege primarily economic loss as an injury in a tort claim, the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie.") (New York law); *Del. Art Museum v. Ann Beha Architects, Inc.*, No. 06-481-GMS, 2007 WL 2601472, at *2 (D. Del. Sept. 11, 2007) ("The economic loss doctrine . . . prohibits recovery in tort where . . . the only losses suffered are economic in nature.") (Delaware law).

Plaintiffs allege that due to Defendants' negligence/conflicts of interest and breach of fiduciary duty they failed as RMBS Trustees to enforce loan R&W claims, declare Events of Default, take action against certain parties, and notify the RMBS certificateholders of breaches or defaults.  TAC ¶¶ 170-71, 182.  Where the applicable PSAs allegedly obligate Defendants to take such actions as RMBS Trustee, *see* TAC ¶¶ 35-42,44-53, tort claims for its purported failure to do so, however, "sound in defendant[s'] failure to take contractual actions . . . ."  *See Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 106 (S.D.N.Y. 2016).  Indeed, Plaintiffs' breach of contract allegations mirror those asserted in tort and seek relief for the same damages to the RMBS certificates.  TAC ¶¶ 150, 154, 170-72, 184.  Consequently, "the injury and the manner in which the injury occurred and the damages sought persuade us that plaintiffs' remedy lies in the enforcement of contract obligations, and are barred by the economic loss doctrine."  *See Blackrock Core Bond Portfolio*, 165 F. Supp. 3d at 106 (internal quotation marks and citations omitted); *see also Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104-VEC, 2015 WL 5710645, at *7 (S.D.N.Y. Sept. 29, 2015) (concluding that allegations of heightened duties, including a duty to make prudent decisions, triggered by an Event of Default, were duties that were "subsumed within the language of the PSAs and indentures" and did not give rise to a separate breach of fiduciary duty claim).

Plaintiffs' tort claims are thus barred by the economic loss doctrine and should be dismissed.

## IV.     PLAINTIFFS ABANDONED THEIR BREACH OF FIDUCIARY DUTY CLAIMS.

Plaintiffs improperly assert breach of fiduciary claims in the TAC (Counts 5 & 6).  Plaintiffs had represented to the Court that they would not bring such claims and the Court dismissed them as abandoned.  *See* Order at *6.

15

Plaintiffs included breach of fiduciary duty claims in their Complaint, ECF No. 1 at 33, 36 (Counts 4 & 5), and Amended Complaint, ECF No. 33 at 27, 29 (Counts 3 & 4), but then, in their opposition to Defendants' motion to dismiss the Amended Complaint, attached a Proposed Second Amended Complaint that substituted such claims for breach of duty to avoid conflict claims, ECF No. 61-1 at 51, 53 (Counts 3 & 4).  When the Court at oral argument questioned Plaintiffs about this discrepancy, they explained "[t]hat was in response to [Defendants'] brief.  We took a look at the [breach of fiduciary duty] claim and put in a proposed seconded amended complaint revising that claim [to a breach of duty to avoid conflicts]."  Hr'g. Tr. 25:23-25, Mar. 1, 2017.  Plaintiffs then represented that "[w]ith the Court's leave to file the second amended complaint, we would plead the allegations that are in the second amended complaint."  Hr'g. Tr. 26:9-20; *see* Order at *6.  In light of those representations, the Court dismissed the breach of fiduciary duty claims with prejudice.  Order at *6; *see* Fed. R. Civ. P. 41(b); *Allen v. N.Y.C. Hous. Auth.*, No. 10-cv-00168-CM-DF, 2012 WL 4794590, at *4 (S.D.N.Y. Sept. 11, 2012) ("A party may voluntarily drop claims by choosing not to include them in a proposed amended pleading.  In such a circumstance, it is appropriate for the Court to dismiss the abandoned claims with prejudice" (citations omitted)).  Despite this representation, and the Court's Order, Plaintiffs improperly include breach of fiduciary duty claims in the TAC and these claims should be dismissed once again.

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims in the Third Amended Complaint should be dismissed in their entirety under Rules 12(b)(1) and 12(b)(6).

Dated: July 14, 2017                                        Respectfully submitted,

                                                                    By:     /s/ Michael T. Marcucci

Michael T. Marcucci
Keith Kollmeyer
James S. D'Ambra, Jr.
JONES DAY
100 High Street, 21st Floor
Boston, MA  02110
(617) 960-3939
mmarcucci@jonesday.com
kkollmeyer@jonesday.com
jsdambra@jonesday.com

David F. Adler
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-1344
dfadler@jonesday.com

Andrew S. Kleinfeld
JONES DAY
250 Vesey Street
New York, NY 10281-1027
(212) 326-3939
askleinfeld@jonesday.com

*Attorneys for Defendant U.S. Bank
National Association*


/s/ Matthew D. Ingber
Matthew D. Ingber
Christopher James Houpt
Silvia Araxie Babikian
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mingber@mayerbrown.com
choupt@mayerbrown.com
sbabikian@mayerbrown.com

*Attorneys for Defendant The Bank of New
York Mellon*

17

## <u>CERTIFICATE OF SERVICE</u>

I, Michael T. Marcucci, certify that on July 14, 2017, I caused the foregoing Notice of Defendants' Joint Motion to Dismiss Plaintiffs' Third Amended Complaint to be filed with the Clerk of the Court and served on all counsel of record by electronic delivery via the ECF system.

/s/ Michael T. Marcucci