UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRIAXX PRIME CDO 2006-1, LTD., TRIAXX PRIME CDO 2006-2, LTD., and TRIAXX PRIME CDO 2007-1, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> THE BANK OF NEW YORK MELLON, and U.S. BANK, NATIONAL ASSOCIATION, <br><br> Defendants. | No. 16-cv-01597-NRB <br><br> Hon. Naomi Reice Buchwald <br><br> **ORAL ARGUMENT REQUESTED** |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

JONES DAY
David F. Adler
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-1344
dfadler@jonesday.com

JONES DAY
Michael T. Marcucci
Keith Kollmeyer
James S. D'Ambra, Jr.
100 High Street, 21st Floor
Boston, MA 02110
(617) 960-3939
mmarcucci@jonesday.com
kkollmeyer@jonesday.com
jsdambra@jonesday.com

*Attorneys for Defendant U.S. Bank National Association*

MAYER BROWN LLP
Matthew D. Ingber
Christopher James Houpt
Silvia Araxie Babikian
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mingber@mayerbrown.com
choupt@mayerbrown.com
sbabikian@mayerbrown.com

*Attorneys for Defendant The Bank of New York Mellon*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

I.    *NATIXIS* DID NOT CHANGE THE LAW; PLAINTIFFS LACK
STANDING TO BRING THEIR BREACH OF CONTRACT CLAIMS ...........................1

    A.    Plaintiffs Misstate *Natixis*'s Facts And Holdings; the Result
There Was Different Because the Contract Was Different......................2

    B.    *Hildene* and Section 7.5 of the Indentures Do Not Save
Plaintiffs' Standing ...................................................................................3

II.    PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED .............................................6

    A.    Plaintiffs Have Not Adequately Alleged That the RMBS
Trustees Owed Them Any Duty ...............................................................6

    B.    Any Claims Were Assigned To the CDO Indenture Trustee..................7

    C.    The Economic Loss Doctrine Bars Plaintiffs' Tort Claims .....................9

III.    COUNT VII FAILS TO STATE A CLAIM.....................................................................10

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

Page

*Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*,
    509 F. App'x 82 (2d Cir. 2013) ...................................................................................... 8

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*,
    57 F.3d 146 (2d Cir. 1995) ........................................................................................ 7, 8

*BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*,
    *Nat'l Ass'n*, No. 14-CV-10067-KPF, 2017 WL 3610511
    (S.D.N.Y. Aug. 21, 2017) ............................................................................................. 5

*BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank*,
    *Nat'l Ass'n*, No. 14-cv-10067-KPF, 2017 WL 1194683
    (S.D.N.Y. Mar. 30, 2017) ............................................................................................. 9

*Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan*
    *Stanley & Co.*, 25 N.Y.3d 543, 35 N.E.3d 481 (2015) ................................................. 7

*CRAFT EM CLO 2006-1, Ltd. v. Deutsche Bank AG*,
    139 A.D.3d 638, 34 N.Y.S.3d 7 (N.Y. App. Div. 1st Dep't 2016) ............................... 5

*CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*,
    610 F.3d 497 (7th Cir. 2010) ........................................................................................ 1

*Dexia SA/NV, Dexia Holdings, Inc. v. Stanley*,
    41 Misc. 3d 1214(A), 980 N.Y.S.2d 275 (N.Y. Sup. Ct. 2013),
    *aff'd sub nom.*, *Dexia SA/NV v. Stanley*, 135 A.D.3d 497,
    22 N.Y.S.3d 833 (N.Y. App. Div. 1st Dep't 2016) ................................................... 8, 9

*Hildene Capital Mgmt., LLC v. Bank of New York Mellon*,
    105 A.D.3d 436, 963 N.Y.S.2d 38 (N.Y. App. Div. 1st Dep't 2013) .................. 3, 4, 5

*House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A.*,
    No. 13-cv-00519-RJS, 2015 WL 1472301 (S.D.N.Y. Mar. 30, 2015) ......................... 5

*Int'l Design Concepts, LLC v. Saks Inc.*,
    486 F. Supp. 2d 229 (S.D.N.Y. 2007) .......................................................................... 8

*National Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
    No. 14-CV-9928-KBF, 2016 WL 796850 (S.D.N.Y. Feb. 25, 2016) .......................... 5

*Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, LLC*,
    149 A.D.3d 127, 50 N.Y.S.3d 13 (N.Y. App. Div. 1st Dep't 2017) .................................. 1, 2, 3

*Phoenix Light SF Ltd. v. Bank of New York Mellon*,
    No. 14-cv-10104-VEC, ECF No. 201 (S.D.N.Y. Sept. 8, 2017) .......................................... 9, 10

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
    No. 14-cv-10116-KBF, 2015 WL 2359358 (S.D.N.Y. May 18, 2015) ..................................... 5

*Pro Bono Inv., Inc. v. Gerry*,
    No. 03-cv-4347-JGK, 2008 WL 4755760 (S.D.N.Y. Oct. 29, 2008) ....................................... 8

*Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*,
    No. 14-cv-08175-LGS-SN, 2017 WL 945099 (S.D.N.Y. Mar. 10, 2017) ............................... 9

*Royal Park Investments SA/NV v. Morgan Stanley*,
    55 Misc. 3d 1210(A), 57 N.Y.S.3d 677, 2017 WL 1379447
    (N.Y. Sup. Ct. Apr. 11, 2017) ............................................................................................... 8, 9

*Triaxx Prime CDO 2006-1, Ltd. v. Ocwen Loan Servicing, LLC*,
    No. 17-cv-80203-RLR, 2017 WL 3701251 (S.D. Fla. Aug. 21, 2017) ..................................... 5

**RULES**

Fed. R. Civ. Proc. 12(b)(1) ............................................................................................................. 6, 10

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................................. 6, 10

**PRELIMINARY STATEMENT**

Plaintiffs did not cure the standing defect that led this Court to dismiss their previous complaint.  *See* Order at *6.[1]  Plaintiffs are still the CDO Issuers who assigned all "right, title and interest" in the RMBS certificates at issue to the CDO Indenture Trustee.  Third Am. Compl. ("TAC") ¶¶ 4, 27.  The CDO Indenture and the Collateral Management Agreement still do not authorize the Plaintiff Issuers to bring claims on RMBS certificates held by the CDO Indenture Trustee.  Since the facts have not changed, Triaxx instead tries to manufacture a change in law.  But the *Natixis* case did not change the law, and its facts are different from here.  Plaintiffs' standing still depends on what the governing agreements say.  They have not changed, and the Court interpreted them correctly the first time.  Since the law and the facts are the same, the result should be the same; except this time, Plaintiffs should get no further opportunity to amend.

**I.     *NATIXIS* DID NOT CHANGE THE LAW; PLAINTIFFS LACK STANDING TO BRING THEIR BREACH OF CONTRACT CLAIMS.**

Plaintiffs assert that the First Department's decision in *Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, LLC*, 149 A.D.3d 127, 132, 50 N.Y.S.3d 13, 17 (N.Y. App. Div. 1st Dep't 2017) changed the law on standing in their favor.  It did not.  The holding of *Natixis* was consistent with the Order: "in answering the question of whether [a] [plaintiff] can bring suit, on its own, on behalf of the trust and certificate holders, the Court must look at the language of the relevant [agreement]."  *See id*.  The Seventh Circuit's decision in *CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 501 (7th Cir. 2010) was the same.

---

[1] Terms not defined herein will have the meanings given to them in Defendants' Memorandum of Law in Support of Defendants' Joint Motion to Dismiss Plaintiffs' Third Amended Complaint.  ECF No. 103 ("MOL").

### A. Plaintiffs Misstate *Natixis's* Facts and Holding; the Result There Was Different Because the Contract Was Different.

Plaintiffs suggest a false equivalence between this case and *Natixis* when, in "describing" *Natixis*, they repeatedly refer to a "plaintiff CDO" that sued "under the direction of the CDO's Securities Administrator" and had standing to do so. *See* Opp'n at 5-6. But *Natixis* did not involve a CDO at all. It was an RMBS trust. And the case was not a suit concerning certificates assigned by an issuer to a trustee. Instead, *Natixis* involved different claims and contractual rights entirely. There the Securities Administrator of an RMBS trust brought so-called "putback" claims to force the RMBS deal sponsor to repurchase mortgage loans that breached certain representations and warranties. *See Natixis*, 149 A.D.3d at 131. The repurchase remedy and the procedure for enforcing it were described in the RMBS trust governing agreement.

The only real parallel between the cases is that plaintiffs' standing in both turn on the terms of the relevant contracts. In *Natixis*, the governing Pooling and Servicing Agreement ("PSA") assigned to the Trustee all "right, title and interest" in the mortgage loans, and then assigned to the Securities Administrator the task of addressing, on behalf of the Trustee and certificateholders, a failure to repurchase a breaching loan. *See Natixis* PSA, ECF No. 112-1. "In the event such required repurchase or replacement does not occur, the Securities Administrator shall take such actions as directed upon written direction from the Depositor and the provision of reasonable indemnity . . . in accordance with sections 6.03 and 10.02." *Natixis*, 149 A.D.3d at 133 (quoting § 2.03(g) of the PSA). The dispute in *Natixis* was whether the Securities Administrator's contractual right to enforce the repurchase obligation was contingent on its receipt of a direction to do so from the Depositor. That question was answered by another provision of the PSA, § 10.02, which states:

> The **Securities Administrator shall have no obligation to appear in, prosecute or defend any legal action** that is not incidental to its duties hereunder and which

> in its opinion may involve it in any expense or liability; **provided, however that the Securities Administrator may in its discretion undertake any such action** that it may deem necessary or desirable **in respect of** this Agreement and the rights and duties of the parties hereto and **the interests of the** Trustee, The Securities Administrator and the **Certificateholders hereunder**.

*Natixis*, 149 A.D.3d 127 at 133 (emphasis added). The *Natixis* court thus concluded that the Securities Administrator could proceed under § 10.02 to enforce repurchases. *See id*.

By contrast, under the contracts here, the Plaintiffs assigned all "right, title and interest" in the RMBS certificates to LaSalle Bank (now succeeded by U.S. Bank) as CDO Indenture Trustee. And the CDO Indentures appoint U.S. Bank, as CDO Indenture Trustee, as "the true and lawful attorney of the Issuer . . . to exercise all rights of the Issuer . . . and to file any claims or take any action or institute any proceedings which the [CDO Indenture] Trustee may deem to be necessary or advisable . . . ." Order at *3 n.2 (quoting Granting Clauses). Unlike the *Natixis* PSA, nothing in the CDO Indentures or the Collateral Management Agreement reserves to the Issuers the power or right to file suit against the RMBS trustees based on the RMBS certificates held by the CDO Indenture Trustee. Under these contracts, the Court's ruling was correct and should be applied to the TAC.

      **B.**     ***Hildene* and Section 7.5 of the Indentures Do Not Save Plaintiffs' Standing.**

In addition to *Natixis*, Plaintiffs' only other new argument is based upon Section 7.5(iv) of the CDO Indenture which provides that "[t]he Issuer shall . . . enforce any of the Pledged Securities or other instruments or property <u>included in the</u> Collateral." *See* MOL at 5 (emphasis added). Plaintiffs claim this gives them the right to sue as though they held the RMBS certificates. But the TAC does not, contrary to Plaintiffs' mischaracterization, state a claim for "enforcement" of the RMBS certificates. No one (other than Plaintiffs) is questioning the CDO Indenture Trustee's ownership of those certificates, right to receive principal and interest payments on those certificates, or to otherwise exercise the rights of a holder of those certificates

3

to bring claims. Nor is there any allegation that the CDO Indenture Trustee has improperly alienated, sold, or otherwise disposed of the RMBS certificates. This provision, when read in the context of Section 7.5 and the Indenture as a whole, relates to the perfection and priority of the security interest <u>in</u> and ownership <u>of</u> the RMBS certificates themselves, and nowhere references claims brought as a holder of the RMBS certificates. *See id.* at 5-6.

Plaintiffs contend that *Hildene Capital Mgmt., LLC v. Bank of New York Mellon*, 105 A.D.3d 436, 438, 963 N.Y.S.2d 38, 40 (N.Y. App. Div. 1st Dep't 2013), supports their Section 7.5 theory. *See* Opp'n at 8-9. But *Hildene* answered a very different question. The claim in *Hildene* was that the CDO indenture trustee had breached the indenture by an unauthorized sale of collateral securities. *See Hildene*, 105 A.D.3d at 437. The First Department's answer was that the issuer "as a signatory to and BNYM's primary counterparty under the Indenture has standing to bring a breach of contract claim in the face of BNYM's sale" of certain RMBS certificates. *See id.* at 438. In other words, a party to a contract (the CDO Indenture) can sue for breach of that contract.

*Hildene*, in fact, illustrates the difference between a CDO issuer taking steps to secure the ownership of the collateral and an issuer attempting to sue as if it were <u>holder</u> of the securities. Section 3.5 of the *Hildene* indenture, like § 7.5 of the CDO Indenture here, allowed the CDO issuer to "take action 'necessary or advisable to: . . . (iv) preserve and defend title to the Collateral.'" *Id.* This language relates to protecting an interest <u>in the Collateral</u> itself, which was precisely the nature of the claims brought in *Hildene*. Said differently, Plaintiffs—like the CDO issuer in *Hildene*—might have standing to bring claims to "enforce" the property included in the Collateral—the RMBS Certificates—in the event U.S. Bank as CDO Indenture Trustee sold or

4

released the Collateral.  But that does not make Plaintiffs the holders of the RMBS certificates or permit them to bring claims proper to such holders.

To the extent *Hildene* can be read to hold that the issuer continued to be the owner of the collateral after it transferred all "right, title and interest" to the CDO Indenture Trustee, *Hildene* was incorrect and goes against the weight of precedent.  Indeed, the First Department has recently—and after *Hildene*—held that an issuer who assigns contractual rights to an indenture trustee loses standing to sue after the assignment.  *See CRAFT EM CLO 2006-1, Ltd. v. Deutsche Bank AG*, 139 A.D.3d 638, 638, 34 N.Y.S.3d 7, 7 (N.Y. App. Div. 1st Dep't 2016) ("However, in the indentures, CRAFT granted nonparty HSBC Bank USA, as trustee, all of CRAFT's rights under the swap agreements, including the right to bring actions and proceedings. Therefore, the motion court, on the record before it, properly found that CRAFT lacked standing to sue.").[2]

And, finally, since the Court's Order, a Magistrate Judge in the United States District Court for the Southern District of Florida has considered and rejected Plaintiffs' arguments regarding § 7.5 of the CDO Indenture.  *See Triaxx Prime CDO 2006-1, Ltd. v. Ocwen Loan Servicing, LLC*, No. 17-cv-80203-RLR, 2017 WL 3701251, at *3 (S.D. Fla. Aug. 21, 2017) (applying New York law and citing the Court's Order).  The court explicitly considered Section 7.5(iv) of these Indentures in stating that the section "fail[s] to establish Plaintiffs' right to sue to defend <u>the value of</u> the collateral."  *See id.* (internal quotation marks and citations omitted) (emphasis added).  This Court should do the same here.

---

[2]*Accord BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-10067-KPF, 2017 WL 3610511, at *2 (S.D.N.Y. Aug. 21, 2017); *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 14-CV-9928-KBF, 2016 WL 796850, at *8 (S.D.N.Y. Feb. 25, 2016); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 14-cv-10116-KBF, 2015 WL 2359358, at *3-4 (S.D.N.Y. May 18, 2015); *House of Europe Funding I Ltd. v. Wells Fargo Bank, N.A.*, No. 13-cv-00519-RJS, 2015 WL 1472301, at *7 (S.D.N.Y. Mar. 30, 2015).

## II.     PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED.

### A.     Plaintiffs Have Not Adequately Alleged That the RMBS Trustees Owed Them Any Duty.

Plaintiffs bring this action in their own name as Issuers. They do not, as they suggest at times, bring this action on behalf of CDO noteholders or the Collateral Manager, or to redress injuries to those parties.[3] To the extent the Collateral Manager asserts an equitable interest in the RMBS certificates as a Secured Party under the CDO Indenture, its status is irrelevant because it is not (and never has been) a party to this case. *See* Opp'n at 14-18. Plaintiffs, as Issuers, are not Secured Parties as defined in the CDO Indenture. *See* CDO Indenture at 1 (Preliminary Statement, defining "Secured Parties"). Thus, Plaintiffs can only seek redress for torts directed at them; since Plaintiffs do not hold the RMBS certificates, they cannot assert claims based on an injury caused to RMBS certificateholders by Defendants' alleged breach of any duty. As Defendants pointed out in their moving brief, whether viewed as a standing issue under Rule 12(b)(1) or a simple pleading failure under Rule 12(b)(6), Plaintiffs have not adequately alleged tort claims. *See* MOL at 7-8.

Plaintiffs have no real answer to Defendants' argument that because the TAC alleges that the RMBS trustees breached duties owed, if at all, to RMBS certificateholders, and Plaintiffs were not holders of the RMBS certificates after the CDO Indentures were signed, Plaintiffs do

---

[3] Plaintiffs, as CDO Issuers, allege that they incurred damages as a result of Defendants' purported breaches of certain duties owed to Plaintiffs as RMBS Trustees. *See, e.g.*, TAC ¶¶ 2 ("Triaxx has been damaged"), 23 ("Triaxx CDOs litigated in their own names"), 24 ("Triaxx CDOs, as here, litigated in their own names"), 149 & 158 ("duties [Defendants] owed to Triaxx and the [RMBS] Subject Trusts"), 154 & 163 ("[Defendants] directly and proximately caused Triaxx to suffer damages, among other things, in the form of losses to the value of the [RMBS] certificates"), 172 & 178 ("[Defendants] . . . [have] directly and proximately caused damages to the [RMBS] Trusts"), 173, 179, 185, 191 ("judgment should be entered in favor of Triaxx and against [Defendants]"), 183 & 189 ("[Defendants'] breaches of [their] fiduciary duty have directly and proximately caused damages to the [RMBS] Subject Trusts"), 184 & 190 ([Defendants'] breaches of [their] fiduciary duty have injured Triaxx, in that they have caused Triaxx losses, have diminished the value of the certificates held by Triaxx, and have prevented the [RMBS] Subject Trusts' Certificateholders from protecting the rights of the [RMBS] trusts"), Prayer for Relief (i)-(vi) ("awarding Triaxx a money judgment").

not state a tort claim.  *See* MOL at 7-10.  Or, put another way, Plaintiffs lack standing to sue for injuries to RMBS certificateholders.  Plaintiffs are former holders of the RMBS certificates, and Plaintiffs cite no law suggesting that RMBS trustees owe duties to former holders.

**B.     Any Claims Were Assigned to the CDO Indenture Trustee.**

Even if Plaintiffs did state tort claims, those claims were among the "property" assigned to the CDO Indenture Trustee for two reasons.  As an initial matter, Plaintiffs are wrong in asserting that this Court held that they retained viable tort claims under the CDO Indenture.  *See* Opp'n at 19.  The Court noted that "at this time (without the benefit of specific briefing) it appears that [Plaintiffs] have retained their standing to bring extracontractual tort claims" and explicitly left "open the possibility that briefing on an amended complaint [ ] may clarify the issue."  Order at *5.

***First*,** Plaintiffs fail to address the breadth of the plain language of the Granting Clauses in which each Plaintiff "Grants to the [CDO Indenture] Trustee . . . all of its right, title and interest in, to and under, in each case, whether now owned or existing, or hereafter acquired or arising . . . <u>any and all other property</u> (other than Excepted Property) <u>of any type or nature owned by it</u> . . . ."  Order at *3 (emphasis added).  As Plaintiffs' own authority states, "<u>either</u> some expressed intent or reference to tort causes of action, <u>or</u> some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims" is required "to effectuate such an assignment" of tort claims.  *See Commonwealth of Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 25 N.Y.3d 543, 551, 35 N.E.3d 481, 486 (2015) (emphasis added).  The Granting Clauses express such an intent and explicitly transfer "broad and unlimited rights and claims" by virtue of the broad and unlimited language:  "any and all other property . . . of any type or nature owned by" Plaintiffs.  *See id.* (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 152 (2d Cir. 1995)).

7

Plaintiffs do no attempt to distinguish Defendants' cases holding that similarly broad and unlimited language transfers tort claims because they cannot. *See* Opp'n at 20 & n.10. Rather, Plaintiffs assert that those cases were decided prior to *Commonwealth* in 2015. *See id.* But *Commonwealth* did not change the law. Moreover, the cases Defendants cite consider *Banque Arabe* (decided in 1995) in concluding that tort claims transferred based upon similar language.[4] These decisions apply in the RMBS/CDO context—they simply interpret contract language— and Plaintiffs offer no explanation why this Court should not follow them.

***Second,*** Plaintiffs' continued reliance on *Dexia*, and now *Royal Park Investments SA/NV v. Morgan Stanley*, 55 Misc. 3d 1210(A), 57 N.Y.S.3d 677, 2017 WL 1379447 (N.Y. Sup. Ct. Apr. 11, 2017), is misplaced. *Dexia* does not articulate a new "explicit language" rule regarding the transfer of tort claims, nor can it overrule the New York Court of Appeals decision in *Commonwealth*. As recognized in *Royal Park*, "[i]t is well settled in New York, that the right to assert a fraud claim related to a contract or note does not automatically transfer with the respective contract or note . . . . There must be some language that evinces an intent to transfer fraud claims." 2017 WL 1379447, at *4 (citing *Dexia* and *Commonwealth*). Notably, *Dexia* and *Royal Park* both addressed situations where the alleged tort occurred before the RMBS certificates were sold to another party who then attempted to bring fraud claims. That is unlike here where the alleged torts occurred in 2009 or later, after Plaintiffs transferred the RMBS certificates to the CDO Indenture Trustee. *See* TAC ¶¶ 75, 114, 124, 129, 131. Regardless, the language in *Dexia* and *Royal Park* is not as broad and unlimited as that in the Granting Clauses.[5]

---

[4] *See Algonquin Power Income Fund v. Christine Falls of N.Y., Inc.*, 509 F. App'x 82, 88 (2d Cir. 2013); *Pro Bono Inv., Inc. v. Gerry*, No. 03-cv-4347-JGK, 2008 WL 4755760, at *16 (S.D.N.Y. Oct. 29, 2008); *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 237 (S.D.N.Y. 2007).

[5] *See Royal Park*, 2017 WL 1379447 at *3 ("Sellers hereby irrevocably sell, assign, transfer, and deliver to the Buyer, and the Buyer hereby irrevocably purchases and acquires from the Sellers, all of the Seller's right, title,

### C. The Economic Loss Doctrine Bars Plaintiffs' Tort Claims.

Plaintiffs argue that the economic loss doctrine does not bar their tort claims, but fail to explain how their contract allegations differ from their tort allegations, which all seek the same damages. *See* Opp'n at 21-22. But, for the first time in their opposition, Plaintiffs assert that Defendants have certain extra-contractual "professional" duties of care which they purportedly breached. *See* Opp'n at 22. There are no such allegations in the TAC, however, and the cases Plaintiffs cite do not apply such a duty to RMBS Trustees. It is well established that a trustee's duties are defined and limited by governing agreements, and not by independent professional duties. *See Royal Park Investments SA/NV v. HSBC Bank USA Nat'l Ass'n*, No. 14-cv-08175-LGS-SN, 2017 WL 945099, at *1 (S.D.N.Y. Mar. 10, 2017). Regardless, "Plaintiffs' allegations that Defendant[s] breached duties independent of [their] contracts do not, themselves, 'allow evasion of the economic loss rule . . . .'" *See BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-cv-10067-KPF, 2017 WL 1194683, at *15 (S.D.N.Y. Mar. 30, 2017) (citation omitted). Thus, "insofar as Plaintiffs have pleaded that Defendant[s] breached, for example, [their] post–EOD fiduciary duty in failing to act as [they] [were] contractually required to, the economic-loss doctrine does bar Plaintiffs' claims." *See id.* at *16; *see also Phoenix Light SF Ltd. v. Bank of New York Mellon*, No. 14-cv-10104-VEC, ECF No. 201 at 37-38 (S.D.N.Y. Sept. 8, 2017) (applying the economic loss doctrine to grant summary judgment on tort claims where "after any Event of Default, Plaintiffs' arguments are

---

(continued…)

and interest in and to the Portfolio Property."); *Dexia SA/NV, Dexia Holdings, Inc. v. Stanley*, 41 Misc. 3d 1214(A), 980 N.Y.S.2d 275 (N.Y. Sup. Ct. 2013) ("The assignment language in the put option transaction is narrower . . . conveying only 'all right, title and interest in the Put Settlement Assets.'"), *aff'd sub nom. Dexia SA/NV v. Stanley*, 135 A.D.3d 497, 22 N.Y.S.3d 833 (N.Y. App. Div. 1st Dep't 2016).

only that BNYM did not act prudently, which is the contractual obligation imposed by the [agreements].").

As for Plaintiffs' breach of fiduciary duty claims, Plaintiffs assert that they are "following the law as clarified" in bringing such claims, *see* Opp'n at 23-24, but they do not contest their representation to the Court that they would not bring those claims or that the Court dismissed the claims with prejudice, *see* Order at *6.

### III.  COUNT VII FAILS TO STATE A CLAIM.

This Court has already rejected Plaintiffs' interpretation of the contracts which forms the basis for Count 7.  *See* Order at *4.  Indeed, this Court specifically considered Plaintiffs' August 2016 demand letter—nearly identical to the 2017 demand letter Plaintiffs now rely upon, TAC ¶¶ 30, 34, 192-99—in concluding that "U.S. Bank (as CDO Indenture Trustee) has not assigned the claims back to the plaintiffs; nor does it appear that it is contractually required to do so unless the demand comes from the 'Majority of the Controlling Class' of noteholders (as defined in the CDO Indentures)." Order at *4.  The Majority of the Controlling Class, of course, have not made such a demand.  Moreover, any purported conflict on the CDO Indenture Trustee's behalf does not necessitate the equitable remedy Plaintiffs seek.  *See* Opp'n at 23-24.  As observed by the Court, Defendants are "open to suits from other plaintiffs or through other avenues," and the Majority of the Controlling Class could, if they so choose, "assign the claims back to the plaintiffs or to someone else." *See* Order at *5.  Accordingly, Count 7 should be dismissed.

### CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims in the Third Amended Complaint should be dismissed in their entirety under Rules 12(b)(1) and 12(b)(6).

Dated: September 12, 2017                                Respectfully submitted,

                                                   By:   /s/ Michael T. Marcucci
                                                         Michael T. Marcucci
                                                         Keith Kollmeyer
                                                         James S. D'Ambra, Jr.
                                                         JONES DAY
                                                         100 High Street, 21st Floor
                                                         Boston, MA  02110
                                                         (617) 960-3939
                                                         mmarcucci@jonesday.com
                                                         kkollmeyer@jonesday.com
                                                         jsdambra@jonesday.com

                                                         David F. Adler
                                                         JONES DAY
                                                         901 Lakeside Avenue
                                                         Cleveland, OH 44114
                                                         (216) 586-1344
                                                         dfadler@jonesday.com

                                                         Andrew S. Kleinfeld
                                                         JONES DAY
                                                         250 Vesey Street
                                                         New York, NY 10281-1027
                                                         (212) 326-3939
                                                         askleinfeld@jonesday.com

                                                         *Attorneys for Defendant U.S. Bank National Association*


                                                         /s/ Matthew D. Ingber
                                                         Matthew D. Ingber
                                                         Christopher James Houpt
                                                         Silvia Araxie Babikian
                                                         MAYER BROWN LLP
                                                         1221 Avenue of the Americas
                                                         New York, NY 10020-1001
                                                         (212) 506-2500
                                                         mingber@mayerbrown.com
                                                         choupt@mayerbrown.com
                                                         sbabikian@mayerbrown.com

                                                         *Attorneys for Defendant The Bank of New York Mellon*